# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

GARY KENNELLY,

    Plaintiff,                         CASE NO. 06-CV-15794

v.                                   DISTRICT JUDGE DAVID M. LAWSON
                                    MAGISTRATE JUDGE CHARLES BINDER

DR. A. FAGHIHNIA,
JOSIAH SMITH,
DR. WESTWOOD,

    Defendants.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS ARDISHIR FAGHIHNIA M.D.,
JOSIAH SMITH, P.A., AND JOE WESTWOOD, D.O.'S
MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) & 42 U.S.C. § 1997e**
(Dkt. 10)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion to dismiss be **GRANTED.**

## II.    REPORT

### A.    Introduction

Plaintiff Gary Kennelly is currently incarcerated by the Michigan Department of Corrections ("MDOC") at its Cooper Street Correctional Facility in Jackson, Michigan. In 2004, he filed a prisoner civil rights action pursuant to 42 U.S.C. § 1983 that was dismissed without prejudice for failure to demonstrate exhaustion of administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (E.D. Mich. Case No. 04-CV-10255.) On April 1, 2005, Plaintiff filed another case reasserting the previously-dismissed claims. (E.D. Mich. Case No. 05-

CV-71287.) The case was summarily dismissed on April 18, 2005. (*Id.*) On May 12, 2006, Plaintiff filed yet another case reasserting the previously-dismissed claims. (E.D. Mich Case No. 06-12197.) The case was dismissed on November 16, 2006. (*Id.*) Finally, this case was filed on December 29, 2006, and by order of U.S. District Judge David M. Lawson, was referred to the undersigned Magistrate Judge for general case management on February 8, 2007. (Dkt. 8.)

### B. The Complaint

Plaintiff states that while incarcerated at Southern Michigan Correctional Facility ("JMF" or "Jackson"), he was assigned to a work detail to assist in roofing for Michigan State Industries ("MSI") against his wishes. (Compl., Dkt. 1 ¶¶ 9, 10.) Plaintiff further avers that on November 3, 2003, he "questioned the assignment to MDOC personnel, pointing out that the high and sustained winds atop an approximately thirty foot high building made the work assignment 'unreasonably dangerous,' but was told: 'We don't care about the wind, we're finishing this job.'" (*Id.* ¶ 11.) Plaintiff states that despite his protests, he was "ordered to the roof and threatened with severe action if he did not comply." (*Id.*)

On November 4, 2003, Plaintiff was again assigned to the same roofing detail and was "ordered to go onto the roof of the MSI building" in spite of the continuing "high sustained winds." (*Id.* ¶¶ 12, 13.) "While working atop the MSI building, a piece of roofing material, approximately 50 feet in length and 10 feet in width, weighing approximately 40-50 pounds, which was not attached to the roof, but which was to be used in the reroofing project, was caught in the gusting winds, and forcefully struck Plaintiff, thereby slamming him to the roof with the material landing atop of him, severely injuring the Plaintiff." (*Id.* ¶ 14.)

Plaintiff further avers that on November 5, 2003, he "continued to feel excruciating back pain and requested medical attention" but that his requests were "ignored." (*Id.* ¶¶ 18, 19.) He

2

claims that on December 15, 2003, x-rays of his back revealed "significant injuries to his lumbar spine at the L3 and L5 levels" and he had never experienced any "back disorder" before this time. (*Id.* ¶ 20.) Plaintiff alleges that his complaints for medical attention, treatment, and pain relief continued to be ignored. (*Id.* ¶ 21.)

Plaintiff's complaint states that no other tests were performed on Plaintiff until February 24, 2005, when an "MRI showed spinal stenosis and a disk herniation." (*Id.* ¶ 22.) Surgery was performed in September 2005; several disks were removed and a titanium plate and screws were implanted. (Dkt. 1 at Ex. 1 (Grievance no. JCF-0603-0041212D3 at 2).)

Plaintiff contends that his medical "conditions were caused by this incident and further caused and/or aggravated by the Defendants' deliberate failure to provide medical treatment." (Compl. ¶ 22.) Plaintiff also asserts that he has "suffered an atrophy of the left triceps and left pectoral muscles" that has "likewise remained untreated." (*Id.* ¶ 23.) Finally, Plaintiff avers that his condition was aggravated by being "required to climb stairs" and by being "assigned to the top bunk in his cell despite repeated requests to assign him to a lower bunk because of the extraordinary amount of pain suffered climbing up to his assigned top bunk" for two months before he was given a lower bunk. (*Id.* ¶¶ 25, 26.)

Plaintiff has named as defendants in this case two doctors and one physician's assistant. There are no allegations in the complaint of any specific actions taken by any specific defendant. Rather, the complaint's allegations are put forth in general averments such as "Plaintiff has repeatedly complained of excruciating pain *to the Defendants* and requested medical treatment." (*Id*. ¶ 24 (emphasis added).) The grievances attached to the complaint, however, provide specific factual allegations against each defendant.

The complaint asserts two causes of action against each of the three Defendants: (1) a claim under 42 U.S.C. § 1983 that his Eighth Amendment right to not have his serious medical needs treated with deliberate indifference was violated; and (2) a claim of gross negligence brought under Michigan law. (*Id*. ¶¶ 6, 10.)

I note that Plaintiff has not sued anyone with decision-making authority regarding his assignment to work on a roof in high winds that resulted in his back injury; rather, the instant complaint focuses on the alleged deliberate indifference to serious medical needs which occurred subsequent to the original injury.

### C. Summary of Defendants' Motion

Defendants move for dismissal on three grounds: (1) that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a); (2) that Defendants were not grossly negligent under Michigan law; and (3) that the complaint fails to state a claim against any defendant because it merely makes vague and conclusory claims about lack of medical treatment and does not allege any acts or omissions that could rise to the level of deliberate indifference. (Dkt. 10.)

### D. Motion Standards & Governing Law

#### 1. Motions to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where there is a failure to state a claim upon which relief can be granted. "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Scheid v. Fanny Farmer*

*Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Accordingly, when deciding a dismissal motion, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176 (6th Cir. 1996) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted) (emphasis added). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.' " *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

In this case, Plaintiff has attached twenty pages of MDOC grievance documentation and medical records to his complaint that are referred to in the complaint and are central to his claims. They will be considered part of the pleadings under *Nieman* and *Weiner*, *supra*, and because these attachments do contain more detailed factual allegations against each Defendant, I suggest that Defendants' argument that the case should be dismissed for failure to meet Rule 8's basic notice pleading requirement is unavailing.

    2.    **Exhaustion of Administrative Remedies**

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by

a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust a claim, a prisoner must proceed through all of the steps of a prison or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court recently provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but **it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion**." *Jones,* 127 S. Ct. at 922-23 (emphasis added).

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. Dec. 19, 2003).[1] The MDOC's grievance procedure consists of steps that a prisoner

---

[1] The policy directive was superceded on March 5, 2007. However, since the December 2003 version was in effect at the time of the grievances at issue here, all references herein will be to that version.

must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.130®. If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(X). The grievance policy provides the following instructions regarding what information needs to be included in a grievance:

> The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). **Dates, times, places and names of all those involved in the issue being grieved are to be included.**

MDOC PD 03.02.130(T).[2]

The prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(Y). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must request a Step II appeal form within five days, and has an additional five days to submit it. MDOC PD 03.02.130(DD). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(HH). The Step III response concludes the administrative grievance process.

### E. Analysis & Conclusions

Defendants assert that Plaintiff has failed to exhaust his administrative remedies with regard to the claims brought in his complaint.

---

[2]I note that the MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the December 2003 version – clearly requires this higher level of specificity.

7

### 1. Defendants Have Not Demonstrated that Plaintiff Failed to Proceed Through All Three Steps of the Grievance Procedure

In the instant case, Plaintiff submitted three grievances relating to the claims bought forward in his lawsuit. Evidence has been submitted conclusively showing that one of the three was exhausted through Step III of the process (grievance number JMF-0511-02167028E, involving P.A. Smith). A Step III resolution denying relief was attached to Plaintiff's Complaint. (Dkt. 1, Ex. 6.)

With regard to the other two grievances, it appears that Petitioner sent in forms appealing the Step II denials, because the Step III appeal sections of these forms are completed. (Dkt. 1, Exs. 3 & 9, grievances JCF-0603-0041212D3 and JMF-0602-0040612D3, respectively.) However, no Step III responses or resolutions to these grievances have been submitted to the Court. Since Defendants bear the burden of proving non-exhaustion and they have not come forward with any evidence that Plaintiff failed to procure a Step III resolution, I suggest that dismissal or summary judgment may not be granted on the ground that Plaintiff failed to proceed through all three steps of the procedure. *Ellis, supra; Williams v. Reis*, No. 06-11312, 2007 WL 1004364, *2 (E.D. Mich. Mar. 29, 2007) (denying motion to dismiss for failure to exhaust and noting that defendants would need to "provide sufficient evidence to meet their burden of showing that a particular claim or defendant has not been exhausted."); *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003)[3] (where there is "no evidence establishing that the 'Appeal Record' is what defendants say it is, [w]e cannot tell from the record whether that document is a complete record of [Petitioner's] appeals.").

---

[3] The Ninth Circuit, like the Second, Third, Seventh, Eighth and D.C. Circuit, held, before *Jones v. Bock, supra,* was decided, that exhaustion was an affirmative defense. *Wyatt*, 315 F.3d at 1117.

### 2. Two of Plaintiff's Claims Were Not Properly Exhausted Because the Grievances Were Not Submitted Within the Policy's Time Limit

#### a. The Grievances

Plaintiff's Step I grievance against Defendant Smith, a physician's assistant, alleged the following:

> From 11-05-03 [to] 12-15-03 I had appointments with P.A. Smith [illegible] to my injury on 11-04-03 which P.A. Smith was fully aware of.
>
> I was injured at the MSI factory at JMF on 11-04-03. P.A. Smith deliberately ignored my repeated requests for the proper diagnoses, MRI, the proper evaluations and treatments for my serious and severe back injuries, that P.A. Smith was fully aware of. P.A. Smith was reckless to demonstrate a substantial lack of concern for the serious and severe back injuries of which he was aware of. This is clearly Gross Negligence in violation of my Eighth Amendment to United States Constitution.

(Compl. Ex. 4, grievance number JMF-0511-2167028E, Step I at 1.) In the "Date of Incident" box, Plaintiff wrote "12-15-03," and he submitted the grievance on November 15, 2005, almost two years later. The grievance was rejected as being untimely with a lengthy explanation. (*See id.*, Step II Response.)

Plaintiff's Step 1 grievance against Defendant Doctor Faghihnia consisted of two type-written single-spaced pages. In pertinent part, it alleged that

> Grievant was injured on an MDOC work detail on 11/4/03. Grievant made numerous attempts to be examined by a Doctor. It was not until seven (7) months later [June 2004] that Grievant was finally examined by Dr. Faghihnia employed at JMF. As a result of Faghihnia's examination, Faghihnia told Grievant "there is nothing wrong with you, pray to God you heal, and get out of my office!!!" At this examination Faghihnia had in his possession X-ray results from 12/15/03 which revealed significant injuries to Grievant's lumbar spine.
>
> After repeated and endless pleas for treatment and pain management, MRI's were finally conducted on [illegible] and 5/24 of 2005. The MRI's revealed a "flattened spinal cord"!, as well as several other significant injuries. Grievant was subsequently required to undergo surgery. Still to this day, even after surgery, Grievant suffers limited ability to function, including limited writing capabilities, constant burning in his hands and arms, and other permanent, life altering injuries and ailments.

(Compl. Ex. 7, grievance number JMF-0602-040612D3, Step I at 2.) In the "Date of Incident" box, Plaintiff wrote "06-1-04," and he submitted the grievance on February 12, 2006, twenty months later.

**b.    Discussion**

Defendants assert that Plaintiff failed to properly exhaust his administrative remedies with regard to the claims raised in these two grievances because Plaintiff did not comply with the time limits set forth in the grievance policy. (Dkt. 10 at 7.) I suggest that Defendants are correct. The Supreme Court has clearly held that failure to properly exhaust bars suit in federal court and that "proper exhaustion" requires compliance with the administrative agency's deadlines. *Woodford*, 126 S. Ct. at 2386.

Plaintiff responds by asserting that there were circumstances beyond his control that prevented his timely submission of these grievances, namely: "(a) his physical condition, (b) a transfer, and (c) refusal of individuals to allow him access to the paperwork." (Dkt. 11 at 5.) In addition, Plaintiff states that he "can explain all this at trial and the foregoing creates an issue for the trier of fact." (*Id.*) I suggest that these reasons could possibly explain short-term untimeliness, but that they fail to explain the delays present here of twenty-three and twenty months, and could not, therefore, create a material issue of fact.

Accordingly, I suggest that the claims against Defendants Smith and Faghihnia be dismissed with prejudice because, pursuant to *Woodford*, Plaintiff failed to properly exhaust his administrative remedies with respect to these claims and the time has passed in which he could do so.

### 3. The Claim Against Defendant Westwood Was Properly Exhausted

Defendants also argue that Plaintiff's grievance against Dr. Westwood was not submitted in a timely fashion.

#### a. The Grievance

The grievance, again consisting of two single-spaced typed pages, stated in pertinent part:

> On 2/22/06 Grievant attended a medical interview with Dr. Westwood at JCF. this was Grievant's first visit with this new Doctor. Westwood opened Grievant's medical file and questioned Grievant as to whom had authorized Grievant to be placed on Neurontin 800mg. Grievant explained the above circumstances in detail. Westwood refused to renew Grievant's prescription for Neurontin 800mg. Westwood instructed Grievant to make a fist, and Grievant did, at which time Westwood said, "that's good enough for me, your Neurontin will not be renewed. I will give you Motrin and Aspirin." Grievant informed Westwood that he was instructed not to take any nsaid (sp?) medication for one year after his surgery. Westwood became belligerent and stated "that's f***ing bulls***!" Grievant explained to Westwood that he is currently waking up at 2 am and 3 am and suffering extreme burning sensations in his hands. Westwood still stated he would not order his Neurontin for him, nor order any increase.

(Compl. at Ex. 1, grievance number JCF-0603-0041212D3, Step I at 2.) The "date of incident" was "2/22/06" and the grievance was submitted on March 2, 2006.

#### b. Discussion

Defendants assert that this grievance was untimely under the policy directive's requirement that grievances be filed within five days of the incident giving rise to the grievance. (Dkt. 10 at 6; MDOC PD 03.02.120(X).) The five-day period, however, does not begin immediately after the incident but rather the directive states that "[w]ithin five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed . . . form . . . to the Step I Grievance Coordinator . . . ." MDOC PD 03.02.120(X). In addition, the policy dictates that "prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by

11

circumstances beyond his/her control." MDOC PD 03.02.120®. Therefore, as a practical matter, the five-day period is really a seven-business-day period.[4] Accordingly, I suggest that Plaintiff's grievance was timely submitted.

As a result, I suggest that only the allegation against Defendant Westwood contained in grievance number JCF-0603-0041212D3 is timely and may be considered properly exhausted. Since this grievance concerns only the acts of Defendant Westwood, as previously stated, I suggest that Defendants Faghihnia and Smith be dismissed for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

### 4. The Allegations Against Defendant Westwood Fail to State a Claim of Deliberate Indifference to Serious Medical Need Under the 8th Amendment

As set forth in the previous section, Plaintiff's claim is that Defendant Westwood's substitution of Motion and Aspirin in place of Neurontin five months after his back surgery rises to the level of a constitutional violation. I suggest that, under the clearly-established bounds of Eighth Amendment jurisprudence, it does not.

The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the Constitution. The Court explained that "[t]his conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id*. at 105.

The standard for deliberate indifference is two-pronged, consisting of both a subjective and an objective element. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271,

---

[4]To avoid confusion, since Defendants refer to it as a "five-day" requirement, so do I.

279 (1991). In order to satisfy the objective component of an Eighth Amendment claim, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994); *Stewart v. Love*, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Thus, mere inadequate medical treatment is not sufficient to state a violation of the Eighth Amendment. In *Estelle,* the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. **Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.** In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (emphasis added) (quotations omitted).

As recognized in *Estelle*, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

In this case, Plaintiff not only received "some" medical attention, but numerous appointments, x-rays, an MRI, and spinal surgery. The dispute in this case is over the proper medication with which to treat Plaintiff's symptoms, and I suggest that such a dispute does not rise to the level of an Eighth Amendment claim. *See Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996) (prison doctor's denial of anesthetic while removing inmate's toenail was not sufficiently serious deprivation to constitute a denial of the minimal civilized measure of life's necessities); *Pendergrass v. Hodge*, 53 F. Supp. 2d 838 (E.D. Va. 1999) (denial of prescribed acetaminophen and ice for swelling following prisoner's fall was not a sufficiently serious deprivation to come within the ambit of the Eighth Amendment's protection).

Accordingly, I suggest that Plaintiff has failed to state an Eighth Amendment claim against Defendant Westwood. There is no indication that Plaintiff was deprived of the "minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298. Dr. Westwood's decision to try switching Plaintiff from Neurontin to a combination of Motrin and Aspirin five months after his surgery is not, I suggest, a sufficiently-serious deprivation to offend "evolving standards of decency." *See Estelle*, 429 U.S. at 106. Accordingly, I suggest that Defendant Westwood's motion to dismiss should be granted.

### 5. Plaintiff's State Law Gross Negligence Claim Against Dr. Westwood

Having suggested the dismissal of Defendants Smith and Faghihnia on the grounds of failure to exhaust administrative remedies and dismissal of the Eighth Amendment deliberate indifference claim against Defendant Westwood for failure to state a claim, the only remaining claim is the state law gross negligence claim against Defendant Westwood. I suggest that, pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), this Court should decline to exercise its discretion to entertain the pendent state law claim.

14

*Id.* at 726 (noting that generally "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") *See also Hankins v. The Gap, Inc.*, 84 F.3d 797, 802-03 (6th Cir. 1996) (when all federal claims have been dismissed at a pretrial stage and the parties are non-diverse, the district court should decline to exercise supplemental jurisdiction over the surviving state law claims).

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

    s/ *Charles E Binder*
    CHARLES E. BINDER
Dated: August 3, 2007    United States Magistrate Judge

**CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Acho and Ronald Chapman, served on Gary Kennelly by first class mail, and served on District Judge Lawson in the traditional manner.

Date: August 3, 2007                    By    s/Jean L. Broucek
                                                            Case Manager to Magistrate Judge Binder